UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RITA PATIN** | * | **CIVIL ACTION NO. 14-3275** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE WHITEHURST** |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation, pursuant to this Court's Standing Order of July 8, 1993.

### I. Background

On September 23, 2011, Claimant, Rita Patin ("Patin"), born in November, 1942, filed an application for survivor's insurance benefits as the widow of wage earner Denis Kelley ("Kelley"), born in November, 1938. (Tr. 15, 19-22).  Patin married Kelley in March, 1962, and they divorced in June, 1974.  (Tr. 19).  Kelley died in December, 2006.

At the time of her September 23, 2011 application, Patin was over 65 years old. (Tr. 15, 19).  She acknowledged in her application that she had not filed a previous application, and that none had been filed for her.  (Tr. 19).

By Notice issued on November 3, 2011, Patin was awarded monthly widow's benefits of 82.5 percent of Kelley's primary insurance amount ("PIA") beginning March, 2011.  (Tr. 15, 22A, 37-38).  On December 8, 2011, Patin requested reconsideration of

her monthly benefits amount and the number of months for which she received back-due benefits. (Tr. 15, 26-27).

By Notice of Reconsideration dated December 27, 2011, the Social Security Administration ("SSA") advised Patin that the widow's benefits calculation was correct. (Tr. 37-38). The Notice of Reconsideration explained that the monthly benefit amount as a widow was the higher of either the amount of her husband's monthly retirement benefit if he were still living, or 82.5 percent of his PIA. The notice further explained that if Kelley were still alive, his monthly retirement benefit would have been $1,348.10. (Tr. 37). Since Patin had applied for widow's benefits after her full retirement age, her monthly widow's retirement benefit was $1,649.60 reduced to 82.5 percent, which equals $1,360.90. Thus, the SSA awarded Patin the higher amount of $1,360.90.

Additionally, the SSA's notice explained that Patin's application for widow's benefits could be retroactive for up to six calendar months before the month in which the application was filed if she had reached full retirement age (65). (Tr. 38). Because she had filed her application for widow's benefits in September, 2011, she could receive benefits no earlier than March, 2011.

After receiving the Notice, Patin requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 41). On July 26, 2012, the ALJ held a telephonic hearing, at which Patin appeared *pro se*. (Tr. 123-3 7). By Decision dated August 1, 2012, the ALJ found that Patin was receiving the highest benefit rate possible of 82.5 percent of Kelley's

PIA, and that the earliest date for which benefits could be paid was March, 2011 (six months before the application date of September 23, 2011). (Tr. 15-18). Thus, the ALJ determined that there was no error.

On November 12, 2014, Patin filed a Complaint for judicial review with this Court.[1]

## II. Standard of Review

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as more than a mere scintilla. *Id.*, 402 U.S. at 401, 91 S.Ct. at 1427. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir.

---

[1] Patin's handwritten brief is largely illegible. The undersigned notes that Patin is proceeding *pro se.* However, she is expected to comply with this Court's Social Security Scheduling Order briefing procedures. [rec. doc. 8]. Patin has not complied with the Court's requirements in this case.

1985).  If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  *Id*. at 393.

### III. Analysis

After a reading of Patin's *pro se* brief, it is difficult to determine what issues she is raising on appeal.  The undersigned discerns that she is presenting the following issues:[2]

(1) Whether Patin was receiving the correct amount of benefits,

(2) Whether the ALJ properly determined that Patin had not alleged disability, and

(3) Whether Patin's brief demonstrates harmful error.

### A. Benefit Amount

20 C.F.R. § 404.338 sets forth the general rules regarding widow's benefits amounts as follows:

> (a) Your monthly benefit is equal to the insured person's primary insurance amount. If the insured person dies before reaching age 62 and you are first eligible after 1984, we may compute a special primary insurance amount to determine the amount of the monthly benefit (see § 404.212(b)).
>
> (b) We may increase your monthly benefit amount if the insured person delays filing for benefits or requests voluntary suspension of benefits, and thereby earns delayed retirement credit (see § 404.313), and/or works before the year 2000 after reaching full retirement age (as defined in § 404.409(a)). The amount of your monthly benefit may change as explained in § 404.304.

---

[2]The Government discerns these same arguments.

>   (c) Your monthly benefit will be reduced if the insured person chooses to receive old-age benefits before reaching full retirement age. If so, your benefit will be reduced to the amount the insured person would be receiving if alive, or 82 ½ percent of his or her primary insurance amount, whichever is larger.

20 C.F.R. § 404.338.

Patin disputes the amount of her widow's benefit. The record reflects that her deceased ex-husband, Kelley, was born on November 13, 1938. (Tr. 16, 20). As of 2011, his full retirement benefit would have been $1,649.00. (Tr. 16). However, because he chose to receive old-age benefits before reaching full retirement age, the most he was entitled to receive based on his record was $1,348.10. (Tr. 37).

Kelley died in December, 2006. As he was receiving reduced benefits at the time of his death, the provisions of 20 C.F.R. § 404.338(c) apply. This subsection provides that if the insured person (Kelley) chose to receive old-age benefits before reaching full retirement age, the widow's benefit would be reduced to the amount he would be receiving if alive, or 82 ½ percent of his PIA, whichever was larger.

Since Patin had applied for widow's benefits after her full retirement age, her monthly retirement benefit would have been $1,649.60 reduced to 82.5 percent, which equals $1,360.90. The Social Security Administration awarded Patin's widow's benefits based on the larger amount. Thus, the SSA's calculation was correctly determined in accordance with § 404.338.

Additionally, Patin argues that she is entitled to retroactive benefits for 12 months, rather than six months as determined by SSA.  20 C.F.R. § 404.621, which governs the payment of retroactive widow's benefits, provides, in pertinent part, as follows:

(a) Filing for disability benefits and for old-age, survivors', or dependents' benefits.

> (1) If you file an application for *disability* benefits, widow's or widower's benefits based on disability, or wife's, husband's, or child's benefits based on the earnings record of a person entitled to disability benefits, after the first month you could have been entitled to them, you may receive benefits for *up to 12 months* immediately before the month in which your application is filed. Your benefits may begin with the first month in this 12-month period in which you meet all the requirements for entitlement. Your entitlement, however, to wife's or husband's benefits under this rule is limited by paragraph (a)(3) of this section.
>
> (2) If you file an application for old-age benefits, *widow's* or widower's benefits not based on disability, wife's, husband's, or child's benefits based on the earnings record of a person not entitled to disability benefits, or mother's, father's, or parent's benefits, after the first month you could have been entitled to them, you may receive benefits for *up to 6 months* immediately before the month in which your application is filed. Your benefits may begin with the first month in this 6-month period in which you meet all the requirements for entitlement. Your entitlement, however, to old-age, wife's, husband's, widow's, or widower's benefits under this rule is limited by paragraph (a)(3) of this section.

(emphasis added).  20 C.F.R. § 404.621.

The ALJ determined that because Patin had not filed a claim for disability, section 404.621(a)(1), providing that an applicant may receive retroactive benefits for up to 12 months, was inapplicable.  (Tr. 17).  (See discussion in Section B below).  Therefore, the ALJ applied § 404.621(a)(2), which provides that applicants for widow's benefits are

entitled to payment of retroactive benefits for up to six months immediately before the date in which the application was filed. (Tr. 17). Because Patin had filed her application for widow's benefits in September, 2011, the ALJ found that she could receive benefits no earlier than March, 2011. Thus, the ALJ's determination complied with the statute.

Patin has cited no basis for challenging the amount paid or the earliest date for which retroactive benefits could be paid. The SSA regulations clearly set forth the method for calculation of widow's benefits, which the ALJ properly applied. Thus, this argument lacks merit.

## B. Disability

Patin requested that her application for benefits be considered as a claim based on disability. (Tr. 17, 135-36). The ALJ found, however, that Patin's request could not be fulfilled because she had never filed an application for disability benefits.

At the hearing, the ALJ asked Patin when her former husband, Kelley, had died. (Tr. 129). After Patin responded that it was in 2006, the ALJ inquired when Patin became aware that she could apply for benefits. Patin first testified that someone in "Dr. Jenny's [her chiropractor's] office" asked why she was not receiving Social Security benefits, and that she later contacted the SSA office. Then, she stated she "thought" that she had called the office prior to that time, but could not "swear" to it. (Tr. 129-31). No evidence exists of any contact with the SSA prior to Patin's application in September, 2011.

20 C.F.R. § 404.621(d), outlining when entitlement to disability benefits begins and ends, provides as follows:

> (d) Filing for a period of disability. You must file an application for a period of disability while you are disabled or no later than 12 months after the month in which your period of disability ended. If you were unable to apply within the 12-month time period because of a physical or mental condition, you may apply not more than 36 months after your disability ended.

20 C.F.R. § 404.621.

The ALJ determined that Patin's application was not filed within 36 months "after her disability ended." (Tr. 17). Additionally, she noted that one of the triggers for ending entitlement to disability benefits is attaining full retirement age, and that claimant had reached age 65 more than 36 months before she filed her application for widow's benefits on September 23, 2011.

20 C.F.R. § 404.316, which governs the period when entitlement to disability benefits begins and ends, provides, in pertinent part, as follows:

> (a) You are entitled to disability benefits beginning with the first month covered by your application in which you meet all the other requirements for entitlement. If a waiting period is required, your benefits cannot begin earlier than the first month following that period.
>
> (b) Your entitlement to disability benefits ends with the earliest of these months:
>
>> (1) The month before the month of your death;

> (2) The month before the month you attain full retirement age as defined in
> § 404.409 (at full retirement age your disability benefits will be
> automatically changed to old-age benefits).[3]

20 C.F.R. § 404.316.

Under this statute, entitlement to disability ends the month before the month the applicant attains full retirement age. Patin was born on November 20, 1942; thus, she reached her full retirement age in November, 2007, when she attained the age of 65. Accordingly, the last month in which she would have been entitled to disability benefits was October of 2007. Because this was more than 36 months before she actually filed her application for benefits on September 23, 2011, she would not be eligible for disability benefits.

As noted by the ALJ, Patin did not file an application for disability benefits. In her application for widow's benefits, Patin acknowledged both that "I do not want to file for SSI [Supplemental Security Income]," and that "I understand I must file a separate application when I wish to establish entitlement to monthly Social Security benefits." (Tr. 19-20). Additionally, even if she had timely filed such application, the record contains a paucity of medical evidence to support any claim for disability.[4] Accordingly,

---

[3] "Full retirement age is the age at which you may receive unreduced old-age, wife's, husband's, widow's, or widower's benefits. Full retirement age has been 65 but is being gradually raised to age 67 beginning with people born after January 1, 1938." 20 C.F.R. § 404.409.

[4] Claimant submitted records from Lisa J. Mount, LCSW at Hearts of Hope, Sexual Abuse Response Center, from June through September, 2010, who noted Patin's symptoms of unsteady gait, confusion, loss of time and inability to express thoughts clearly, as well as her complaints of pain/pressure in her eye and head, seeing spots/light flashes in her left eye, and chest, arm and upper back pain. (Tr. 106-07). Mount noted that Patin's fear of medical professionals had been an obstacle in her obtaining treatment. Additionally, Patin was seen in 2008 by Dr. Jennie L. Perry ("Perry"), chiropractor, for complaints of disequilibrim, stomach problems, cognitive deficit, PTSD, lack of

this argument lacks merit.

**C. Error**

Patin notes that she was unrepresented by counsel at the hearing. The following colloquy transpired at the hearing:

> **ALJ**: You also need to be advised that you have the right to have a representative at this hearing. When Social Security received your claim file, they sent a letter to you telling you that you have the right to a representative. It can be a lawyer. It does not have to be a lawyer. But Social Security does not appoint representatives for applicants. If you want one, it's your responsibility to find one.
>
> People have representatives for many different reasons. Representatives can help you get any records that you think would help with your claim. They come to the hearing with you. They frequently make arguments to the judge telling us why they think their client is entitled to certain benefits.
>
> Representatives also have the right to be paid for their services. The only ones that generally do not charge are Legal Aid. Most other representatives do charge a fee. However, they cannot collect the fee until it is approved by Social Security. If you go to hearing without a representative, one of my responsibilities is to try to help you get any records that you believe would help prove your claim. But I have to tell you, I can write to anyone requesting records. If they do not respond, I can't make them send those records to me. I don't have that kind of authority.
>
> At this time, I will ask you, Ms. Patin, do you understand that you have the right to a representative at the hearing this morning?
>
> **CLMT**: Yes, I do. I was told – I was denied the Legal Aid because

---

coordination and latent effect of external causes. (Tr. 96-97). Because Patin could not tolerate any manipulation, Dr. Perry did not perform it, and treated her primarily with trigger point therapy, massage and some counseling. It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

> they had so many cases, I'm understanding, prior to me. And while I was still getting benefits, you know, it wasn't a priority. But I did speak to the Legal Aid attorney the day before yesterday. And, you know, he just advised me to ask for benefits to 65 because of disability, and for you to please ask for the medical records. And, of course, I will explain, you know, what the disability is about today. But –
>
> **ALJ**: Ok. Before we do that, let me ask you this. Do you understand that – are you waiving your right to a representative at the hearing?
>
> **CLMT**: Well, I understand – yes.
>
> **ALJ**: All right.
>
> **CLMT**: I mean, I'm forced to – the answer is yes.

(Tr. 127-28).

A claimant is entitled to adequate notice of her right to counsel at a hearing before an ALJ. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (*citing Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)).

To merit reversal of the ALJ's decision, however, a claimant who does not validly waive her right to counsel must prove that she was thereby prejudiced. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully

developed the record, and that the additional evidence might have led to a different decision.  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

The Commissioner argues that claimant validly waived her right to counsel because she had received several written notices advising her of the right to an attorney. (Tr. 13, 24, 39, 42, 44-47).  In support of its argument, the Commissioner cites *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003), in which the Fifth Circuit concluded that claimant's receipt of numerous written notices of her right to counsel, along with the ALJ's reminder at the hearing of her right to counsel, sufficiently informed her of her right to an attorney such as to constitute a valid waiver.

Here, as in *Castillo*, the record reflects that claimant received several notices of her right to representation.  Additionally, the ALJ reminded her of her right to an attorney at the hearing.[5]  Thus, I find that the waiver was valid.

Assuming that the waiver was invalid, claimant must still show that she was prejudiced thereby.  *Brock*, 84 F.3d at 728; *Gullett*, 973 F.Supp. at 621.  To establish prejudice, claimant must show that counsel "could and would have adduced evidence that might have altered the result."  *Brock*, 84 F.3d at 728 (*quoting Kane*, 731 F.2d at 1220).

Plaintiff asserts that she was "forced" to testify at the hearing.  However, at the beginning of the hearing, she testified as follows:

**CLMT**: I really appreciate this opportunity, truly.

---

[5]The undersigned also observes that claimant had a college degree and reported above average academic performance.  (Tr. 103)

(Tr. 125).

>Likewise, at the conclusion of the hearing, Patin reiterated her position as follows:

>**CLMT**: I appreciate this opportunity, because I'm not sure I could go to Opelousas to do this, to be frank with you. . . . So, I truly appreciate this opportunity.

(Tr. 135).

Based on her own testimony, the undersigned finds that Patin did not appear "forced" to attend the hearing. In any event, she has not met her burden of showing that any error was prejudicial. *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012) (*citing Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) (noting that "procedural perfection in administrative proceedings" is not required as long as "the substantial rights of a party have not been affected").

Patin also asserts that she wrote a letter to the Appeals Council attaching evidence which had been omitted. The Notice of Appeals Council Action dated May 15, 2014, acknowledged that the Appeals Council had received Patin's additional information. (Tr. 5-10). It determined, however, that this evidence did not provide a basis for changing the ALJ's decision. (Tr. 5-6).

The Appeals Council explained that the record did not contain evidence showing that she had submitted an earlier application for widow's benefits, or had been prevented from filing an application based on misinformation. While the Appeals Council observed that Patin had attached a notice acknowledging her request for information on November

13

16, 2007 (Tr. 9, Exhibit 21), that notice did not constitute a protective filing of her application for benefits because she did not indicate any intent to file a claim.

Further, the Appeals Council found that the medical evidence submitted was not relevant to the issue before the ALJ or the Appeals Council. It informed Patin that "[y]ou did not apply for widow's benefits until you were at least 60 years old, and it is therefore not necessarily [sic] to consider whether you met the disability requirements under our regulations (20 CFR 404.33(c))." (Tr. 6).

The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error. *Jones*, at 691 F.3d at 734-45. Patin asserts only that she had submitted information to the Appeals Council which had been omitted from the ALJ's decision. She has not met her burden to show that any error was harmful. *Id*. at 735. Thus, this argument lacks merit.

### IV. Conclusion

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any

objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 28th day of July, 2016, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE